IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY          PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:12CV261 HTW-LRA

DERYL DEDMON, JR., BUFFY SMITH,
THE ESTATE OF JAMES C. ANDERSON (DECEASED),
BARBARA ANDERSON YOUNG (INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE OF JAMES C. ANDERSON),
ANNZORA ANDERSON, EDWARD J. ANDERSON,
AND LOUIS ANDERSON                                       DEFENDANTS

### ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY'S
### COMPLAINT FOR DECLARATORY JUDGMENT

Allstate Property and Casualty Insurance Company (hereinafter
"Allstate"), by and through counsel, files this Complaint for
Declaratory Judgment pursuant to 28 U.S.C.A. § 2201, *et seq.*, and
seeks a declaratory judgment and other relief from this Court, and
states as follows:

### I.   PARTIES

1.    Allstate is an insurance company organized and existing
under the laws of the State of Illinois, and is a citizen of the
State of Illinois with its principal place of business in the State
of Illinois.

2.    Allstate is authorized to do business and is doing
business in the State of Mississippi.

3.    Deryl Dedmon, Jr. (hereinafter "Mr. Dedmon") is a
resident citizen of Rankin County, Mississippi, but is currently
believed to be incarcerated in Hinds County, Mississippi, or in a

Mississippi Department of Corrections facility pursuant to his guilty plea to the crime of murder.

4.    Buffy Smith (hereinafter "Ms. Smith") is an adult resident citizen of Rankin County, Mississippi.

5.    The Estate of James C. Anderson (hereinafter "the Estate") is an estate for a now-deceased Hinds County resident opened in the Chancery Court of Hinds County, Mississippi, as Cause No. P2011-459, and with Barbara Anderson Young duly appointed as the Administratrix of the Estate.

6.    Barbara Anderson Young (hereinafter "Ms. Young") is an adult resident citizen of Lafayette County, Mississippi.

7.    Annzora Anderson (hereinafter "Ms. Anderson") is an adult resident citizen of Holmes County, Mississippi.

8.    Louis Anderson (hereinafter "Mr. L. Anderson") is an adult resident citizen of Holmes County, Mississippi.

9.    Edward J. Anderson (hereinafter "Mr. E. Anderson") is an adult resident citizen of Holmes County, Mississippi.

## II.    JURISDICTION AND VENUE

10.    This action involves a dispute between citizens of different states, and the amount in controversy clearly exceeds the sum of $75,000.00, exclusive of interests and costs. Accordingly, this Court has diversity of citizenship jurisdiction over this action pursuant to 28 U.S.C.A. § 1332.

11.   At issue is purported liability coverage under both (A) an Allstate policy of automobile insurance (hereinafter "the Automobile Policy") issued to Ms. Smith with an "each person" liability coverage limit of $25,000 (see copy of the Automobile Policy hereto attached as Exhibit "A"), and (B) an Allstate homeowners policy (hereinafter "the Homeowners Policy") issued to Ms. Smith with a liability coverage limit of $100,000 for "each occurrence" (see copy of the Homeowners Policy hereto attached as Exhibit "B").

12.   Moreover, further at issue are the rights and obligations of the parties as to the Automobile Policy and the Homeowners Policy issued to Ms. Smith, including (but not limited to) Allstate's rights and obligations in regard to payment of attorney's fees and expenses in defense of Mr. Dedmon and Ms. Smith in a legal action filed by Ms. Young, Ms. Anderson, Mr. E. Anderson, Mr. L. Anderson, and the Estate.

13.   Venue is proper in this judicial district (and more specifically, this judicial division) under 28 U.S.C.A. § 1391(a) because (A) five of the six individual Defendants are residents of the jurisdictional area encompassed by the United States District Court for the Southern District of Mississippi (with these same five Defendants also being residents of the area comprising the Jackson Division), and (B) because the events giving rise to the underlying incidents and claims occurred in Hinds County,

3

Mississippi, or in Rankin County, Mississippi, both of which counties are in the Southern District of Mississippi (and, more specifically, in the Jackson Division), and (C) an underlying legal action is pending in the Circuit Court for the First Judicial District of Hinds County which is in the Southern District of Mississippi (and, again more specifically, in the Jackson Division).

### III. UNDERLYING LAWSUIT

14.   The underlying dispute involves the acts of Mr. Dedmon which caused injuries to and the death of Mr. James C. Anderson (hereinafter "the Deceased").

15.   The four individual Defendants in this legal action, besides Mr. Dedmon and Ms. Smith, are (1) Ms. Young (who is the sister of the Deceased and has been appointed the Administratrix of the Estate of James C. Anderson), (2) Ms. Anderson (who is the mother of the Deceased), (3) Mr. L. Anderson (who is the brother of the Deceased), and (4) Mr. E. Anderson (who is the brother of the Deceased).

16.   These four individual Defendants (the above-named individual defendants besides Mr. Dedmon and Ms. Smith) filed a lawsuit in the Circuit Court of Hinds County against the other individual Defendants herein, Mr. Dedmon and Ms. Smith, as well as others.  See copy of Complaint attached hereto as Exhibit "C" and see copy of Amended Complaint attached hereto as Exhibit "D", and

4

see copy of Second Amended Complaint attached hereto as Exhibit "E", and see copy of Third Amended Complaint attached hereto as Exhibit "F".

17.   The Complaint in the underlying legal action (hereinafter "the Underlying Lawsuit") was filed on September 6, 2011, and the Amended Complaint was filed on September 13, 2011, and the Second Amended Complaint was filed on February 3, 2012, and the Third Amended Complaint was filed on March 21, 2012.

18.   The Complaint, the Amended Complaint, the Second Amended Complaint, and the Third Amended Complaint (hereinafter all collectively "the Collective Complaints") in the Underlying Lawsuit allege that Mr. Dedmon was responsible for the death of the Deceased on June 26, 2011. (See Exhibit "C", Exhibit "D", Exhibit "E" and Exhibit "F").

19.   In addition, the Third Amended Complaint in the Underlying Lawsuit alleges Ms. Smith, Mr. Dedmon's mother, is the owner of the truck which Mr. Dedmon was driving when he killed Mr. Anderson and that she negligently entrusted the truck to Mr. Dedmon and that she is also liable for Mr. Anderson's death and resulting damages.

20.   The Plaintiffs incorrectly identified Mr. Dedmon's mother as Crystal Dedmon in the Second Amended Complaint (see Exhibit "E") but correctly identified her in the Third Amended Complaint (see Exhibit "F").

5

21.   After being indicted by a Grand Jury in September, 2011, Mr. Dedmon was arrested and charged with the willful crime of capital murder with enhancement as a hate crime.  (See Indictment attached hereto as Exhibit "G").

22.   On March 22, 2012, Mr. Dedmon pled guilty under oath to this willful crime of capital murder with enhancement as a hate crime, and admitted he committed the intentional acts of assaulting Mr. Anderson, beating him, and murdering him using a motor vehicle. (See certified transcript of the guilty plea proceedings attached hereto as Exhibit "I").

23.   Some of the alleged acts by Mr. Dedmon involve the use of a Ford F-250 pick-up truck (hereinafter "the Truck") and some of the alleged intentional acts by Mr. Dedmon are not related to the Truck.   The alleged acts of Ms. Smith involve ownership and entrustment of the Truck.  See the collective Complaints attached hereto as Exhibit "C", Exhibit "D",  Exhibit "E", and Exhibit "F".

### IV.   THE INSURANCE POLICIES

24.   As stated earlier, Allstate issued two (2) policies to Buffy Smith which were in effect at the time the Deceased, James C. Anderson, was killed on or about June 26, 2011.

25.   The first policy is Allstate (Mississippi) Automobile Policy Number 931758348 ("the Automobile Policy").   (See Exhibit "A" attached hereto).

26.   The second policy is Allstate (Mississippi) Homeowners Policy Number 931765357 ("the Homeowners Policy").   (See Exhibit "B" attached hereto).

**V. POLICY LANGUAGE**

27.   The two Allstate insurance policies at issue (hereafter referred to as "the Policies" when referred to collectively) in this case contain various provisions pertinent to this matter including but not limited to definitions of terms, obligations on the policyholder and on other insured persons, and exclusions of liability coverage.

**A.    THE AUTOMOBILE POLICY**

28.   The Automobile Policy provisions include the following pertinent definitions in the policy:

> **Definitions Used Throughout The Policy**
> The following definitions apply throughout the policy unless otherwise indicated.   Defined words are printed in bold face type.
>
> 2.  **"Allstate,""We,""Us," or "Our"** means the company shown on the Policy Declarations.
>
> 4.  **"Bodily Injury"** means physical harm to the body, sickness, disease, or death, but does not include:
>     a. Any venereal disease;
>     b. Herpes;
>     c. Acquired Immune Deficiency Syndrome (AIDS);
>     d. AIDS Related Complex (ARC);
>     e. Human Immunodeficiency Virus (HIV);
>     or any resulting symptom, effect, condition, disease or illness related to a. through e. listed above.

7

5. **"Insured Auto"** means any **auto or utility auto you** own which is described on the Policy Declarations.

6. **"Non-owned Auto"** means an **auto** used by **you** or a **resident** relative with the owner's permission but which is not:
   a. owned by **you** or a **resident** relative, or
   b. available or furnished for the regular use of **you** or a **resident** relative.

8. **"Resident"** means a person who physically resides in **your** household with the intention to continue residence there. **We** must be notified whenever an operator becomes a **resident** of **your** household.

11. **"You"** or **''Your"** means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

29. Additionally, the Automobile Policy further provides as follows:

**Insuring Agreement**
If **you** pay the premiums when due and comply with the policy terms, **Allstate,** relying on the information **you** have given **us,** makes the following agreements with **you.**
The terms of this policy impose joint obligations on persons defined in applicable sections of this policy as insured persons. This means that the responsibilities, acts and omissions of a person defined as an insured person will be binding upon other person(s) defined as insured person(s).

**Duty To Report Policy Changes**
**Your** policy was issued in reliance on the information **you** provided concerning **autos,** persons insured by the policy and **your** place of residence. To properly insure **your auto,** **you** must promptly notify **us** when **you** change

8

**your** address or whenever any **resident** operators insured by **your** policy are added or deleted.

**What To Do If There Is A Loss**
1. If an insured person has an accident involving a motor vehicle, **Allstate** or any authorized agent of **Allstate** must be informed as soon as possible of all details.

3. If an insured person is sued as the result of a motor vehicle accident, **we** must be informed immediately.

**Assistance And Cooperation Of The Insured**
An insured person must cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit.

**Combining Limits of Two or More Autos Prohibited**
The coverage limits applicable to any one **auto** or **utility auto** shown on the Policy Declarations will not be combined with or added to the coverage limits applicable to any other **auto or utility auto** shown on the Policy Declarations or covered by the policy. This means that no stacking or aggregation of coverages will be allowed by this policy. This is true even though a separate premium is charged for each of those **autos** or **utility autos.** This is true regardless of the number of:
1. **autos** or persons shown on the Policy Declarations;
2. **autos** involved in the accident;
3. persons seeking damages as a result of the accident; or
4. insured persons from whom damages are sought.

**Fraud Or Misrepresentation**
This policy shall be deemed void from its inception if it was obtained or renewed through material misrepresentation, fraud or concealment of material fact. This means that **Allstate** will not be liable for any claims or damages which would otherwise be covered had

9

there not been material misrepresentation, fraud, or concealment of material fact.

**We** do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

**Action Against Allstate**
No suit or action may be brought against **us** unless there has been full compliance with all policy terms and conditions.

30.  The Automobile Policy further provides as follows:

**Part 1**
**Automobile liability Insurance Bodily Injury liability- Coverage AA**
**Property Damage Liability - Coverage BB**
**General Statement of Coverage**
If a premium is shown on the Policy Declarations for Bodily Injury Liability Coverage and Property Damage Liability Coverage, **Allstate** will pay damages which an **insured person** is legally obligated to pay because of:
1. **bodily injury** sustained by any person, and
2. damage to, or destruction of, property.
Under these coverages, **your** policy protects an **insured person** from liability for damages arising out of the ownership, maintenance or use, loading or unloading of an **insured auto.**

**We** will not pay any punitive or exemplary damages, fines or penalties under Bodily Injury Liability coverage or Property Damage Liability coverage.

**We** will defend an **insured person** sued as a result of a covered accident involving an **insured auto. We** will choose the counsel. **We** may settle any claim or suit if **we** believe it is proper. **We** will not defend an **insured person** sued for damages arising out of **bodily injury** or property damage which are not covered by this policy.

10

Additional Definition for Part 1
**"Insured Person(s)"** means:
1. While using **your insured auto:**
   a. **you,**
   b. any **resident,**
   c. and any other person using it with **your** permission.
2. While using a **non-owned auto:**
   a. **you,** and
   b. any **resident** relative.

**Exclusions- What Is Not Covered**
**Allstate** will not pay for any damages an **insured person** is legally obligated to pay because of:

6. **bodily injury** or property damage intended by, or reasonably expected to result from, the intentional or criminal acts or omissions of an **insured person.** This exclusion applies even if:
   a. an **insured person** lacks the mental capacity to control or govern his or her conduct;
   b. an **insured person** is temporarily insane or temporarily lacks the mental capacity to control or govern his or her conduct or is temporarily unable to form any intent to cause **bodily injury** or property damage;
   c. such **bodily injury** or property damage is of a different kind or degree than intended or reasonably expected; or
   d. such **bodily injury** or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

This exclusion precludes coverage for any **insured persons** under the policy regardless of whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions.

**Limits Of Liability**
The limits shown on the Policy Declarations are the maximum **we** will pay for any single accident involving an **insured auto.** The limit stated for each person for **bodily injury is our** total limit of liability for all damages because of **bodily injury** sustained by one person, including all damages sustained by anyone else as a result of that **bodily injury.**

The liability limits shown on the Policy Declarations may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available. This applies regardless of the number of:
    1. policies involved;
    2. vehicles involved;
    3. persons covered;
    4. claims made;
    5. vehicles or premiums shown on the Policy Declarations; or
    6. premiums paid.

THIS MEANS THAT NO STACKING OR AGGREGATION OF AUTOMOBILE LIABILITY INSURANCE- BODILY INJURY AND PROPERTY DAMAGE WHATSOEVER WILL BE ALLOWED BY THIS POLICY.

**If There Is Other Insurance**
If more than one policy applies on a primary basis to an accident involving **your insured auto, we** will bear **our** proportionate share with other collectible liability insurance. If an **insured person** is using a **substitute auto** or **non-owned auto, our** liability insurance will be excess over other collectible insurance. However, if an **insured person** is operating an **insured auto** which is owned by a person, firm, or corporation in the business of selling, leasing, repairing, servicing, delivering, testing, road testing, parking, or storing motor vehicles, **our** liability insurance will apply on a primary basis.

12

A.   **THE MISSISSIPPI HOMEOWNERS POLICY**

31.   The Homeowners Policy provisions include the following pertinent definitions in the policy:

**Definitions Used in This Policy**

\*       \*       \*

4.   **"Bodily Injury"** – means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a)   any venereal disease;
   b)   Herpes;
   c)   Acquired Immune Deficiency Syndrome (AIDS);
   d)   AIDS Related Complex (ARC);
   e)   Human Immunodeficiency Virus (HIV);
   or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

\*       \*       \*

6.   **"Business"** – **means:**
   a)   any full or part-time activity of any kind engaged in for economic gain including the use of any part of the premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

\*       \*       \*

9.   **"Occurrence"** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

\*       \*       \*

10. **"Property Damage"** – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

32. Additionally, the Homeowners Policy further provides as follows:

***Concealment Or Fraud***
**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

33. The Homeowners Policy also provides as follows:

**Coverage X**
**Family Liability Protection**
**Losses under Coverage X:**
Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

\*       \*       \*

**Losses We Do Not Cover Under Coverage X**
1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

(a) such **insured person** lacks the mental capacity to govern his or her conduct;

(b) such **bodily injury** or **property damages** of a different kind or degree than that intended or reasonably expected, or

14

(c)   such **bodily injury** or **property damage** is sustained by a different person than that intended or reasonably expected.

\*   \*   \*

5.   We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

a) a motor vehicle in dead storage or used exclusively on an insured premises;

b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured premises;

c) a motorized wheel chair;

d) a vehicle used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration;

e) a go-cart owned by an insured person when used for golfing purposes;

f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g) lawn and garden implements under 40 horsepower;

h) bodily injury to a residence employee.

15

34.  Finally, the Homeowners policy provides as follows:

**Section II Conditions**
1.  **What you must do after an accidental loss**
    In the event of **bodily injury** or **property damage**, **you** must do the following:
    a)  Promptly notify **us** or **our** agents stating:
        1)  **your** name and policy number;
        2)  the dates, the place and the circumstances of the loss;
        3)  the name and address of anyone who might have a claim against an **insured person**;
        4)  the names and addresses of any witnesses.
    b)  Promptly send **us** any papers relating to the accident.
    c)  At **our** request, an **insured person** will:
        1)  cooperate with **us** and assist **us** in any matter concerning a claim or suit;
        2)  help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
        3)  attend any hearing or trial.

**VI. THERE IS NO LIABILITY COVERAGE UNDER EITHER OF THE POLICIES FOR EITHER MR. DEDMON OR MS. SMITH UNDER THE CIRCUMSTANCES**

35.  Based upon the clear and unambiguous provisions of the two policies, there is no liability coverage for the intentional acts by Mr. Dedmon or for any alleged damages resulting from the acts by Mr. Dedmon.

36. Moreover, the exclusions in the Allstate policy which mandate a lack of liability coverage for Mr. Dedmon further mandate a lack of liability coverage for Ms. Smith under the circumstances.

37. The terms of the two policies at issue clearly and unambiguously exclude liability coverage for the acts of Dedmon and the acts of Ms. Smith, as well as the damages sought against either or both of them in the Underlying Lawsuit.

38. Regardless of any characterization by the Plaintiffs in the Underlying Lawsuit of Mr. Dedmon's acts which resulted in the death of Mr. Anderson as being "negligent", Mr. Dedmon's acts, both in use of the Truck and unrelated to the Truck, were intentional and are thereby not covered by the liability coverage provisions of either the Automobile Policy or the Homeowners Policy.

39. On March 21, 2012, Mr. Dedmon signed a written Petition to Enter a Guilty Plea to the crime of capital murder with enhancement as a hate crime, which was thereafter filed. See Petition to Enter a Guilty Plea attached hereto as Exhibit "H".

40. Further, Mr. Dedmon's testimony at his guilty plea proceedings on March 21, 2012, confirms his intentional acts which resulted in injuries and the death of Mr. Anderson and establishes beyond question the intentional nature and consequences of Mr. Dedmon's acts. See transcript of guilty plea proceedings attached hereto as Exhibit "I".

41.  Moreover, the Plaintiffs and their counsel in the Underlying Lawsuit were present at the guilty plea proceedings and heard the undisputed testimony of Mr. Dedmon as to his intentional acts and the nature and consequences of his acts.

42.  Still further, the provisions of the Allstate Policies which mandate a lack of liability coverage for Mr. Dedmon for his intentional acts further mandate a lack of liability coverage under the Policies for Ms. Smith under the circumstances, regardless whether her acts allegedly leading to Mr. Dedmon's intentional acts were negligent, not intentional, acts on her part.

**VII.  THERE IS NO LIABILITY COVERAGE FOR MR. DEDMON OR MS. SMITH UNDER THE AUTOMOBILE POLICY BECAUSE THE ACTIONS BY MR. DEDMON INVOLVING THE TRUCK WERE INTENTIONAL AND EXCLUDED FROM COVERAGE**

43.  Under the provisions of the Allstate policy, Mr. Dedmon is presumed for purposes of this legal action to meet the definition of an "insured person" because he was using the Truck which was owned by Ms. Smith and which was listed as an "Insured Auto" under the policy.

44.  The Automobile Policy clearly excludes liability coverage for the intentional acts of an insured person, and as stated earlier, the actions by Mr. Dedmon were clearly intentional so as to not be covered by the Automobile Policy.  See Exhibit "H" with Mr. Dedmon's written testimony that he "ran over James Anderson intentionally, causing his death, because of his race."

45.   The Automobile Policy clearly provides as follows:

**Exclusions- What Is Not Covered**
**Allstate** will not pay for any damages an **insured person** is legally obligated to pay because of:

6. **bodily injury** or property damage intended by, or reasonably expected to result from, the intentional or criminal acts or omissions of an **insured person.** This exclusion applies even if:
    a. an **insured person** lacks the mental capacity to control or govern his or her conduct;
    b. an **insured person** is temporarily insane or temporarily lacks the mental capacity to control or govern his or her conduct or is temporarily unable to form any intent to cause **bodily injury** or property damage;
    c. such **bodily injury** or property damage is of a different kind or degree than intended or reasonably expected; or
    d. such **bodily injury** or property damage is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

This exclusion precludes coverage for any **insured persons** under the policy regardless of whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions.

46.   Throughout the Complaint, the Amended Complaint, the Second Amended Complaint, and the Third Amended Complaint the Plaintiffs allege that Mr. Dedmon's acts were intentional.   (See Exhibit "C", Exhibit "D", Exhibit "E", and Exhibit "F").

19

47.   Although the Plaintiffs contradictorily allege in places that some of Mr. Dedmon's acts involving the use of the Truck were "negligent", compiled evidence (in the form of a surveillance video and otherwise) supporting the criminal charges against Mr. Dedmon, as well as Mr. Dedmon's testimony supporting his guilty plea to murder, conclusively establish beyond question the acts were intentional.

48.   Therefore, under the law, pursuant to the intentional acts exclusion contained in the Automobile Policy issued by Allstate, the acts of Defendant Dedmon and any resulting damages are not covered under the Automobile Policy.

49.   Moreover, the exclusions in the Automobile Policy which mandate a lack of liability coverage for Mr. Dedmon further mandate a lack of liability coverage for Ms. Smith under the circumstances.

50.   Again, Allstate's Automobile Policy clearly and unambiguously provides that "Allstate will not pay for any damages an **insured person** is legally obligated to pay because of **bodily injury** . . . intended by, or reasonably expected to result from, the intentional or criminal acts or omissions of an insured person".

51.   As to application of this intentional acts exclusion, the clear and unambiguous Allstate policy provisions further provide as follows:

> This exclusion applies regardless of whether an **insured person** is actually charged with, or convicted of, a crime.

20

> This exclusion precludes coverage for <u>any</u> **insured persons** under the policy regardless of whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions. [Emphasis added.]

52.   Consequently, because Mr. Dedmon's acts were intentional, and because the bodily injury (Mr. Anderson's injuries and death) and damages resulting from Mr. Dedmon's acts were intended by or reasonably expected to result from his acts, this same intentional acts exclusion which precludes coverage for Mr. Dedmon, as an "**insured person**", also "precludes coverage for <u>any</u> **insured persons** under the policy" [emphasis added], including but not limited to Ms. Smith, even though Ms. Smith did not participate in the intentional or criminal acts.

## VIII.   THERE IS NO LIABILITY COVERAGE UNDER THE AUTOMOBILE POLICY FOR ANY PUNITIVE OR EXEMPLARY DAMAGES, FINES OR PENALTIES

53.   In the Collective Complaints, the Plaintiffs in the Underlying Lawsuit seek punitive damages from Mr. Dedmon and, in the Third Amended Complaint, from Ms. Smith.  See Exhibit "C", Exhibit "D", Exhibit "E" and Exhibit "F" attached hereto.

54.   The clear and unambiguous provisions of the Automobile Policy provide as follows:

> **We** will not pay any punitive or exemplary damages, fines or penalties under bodily injury liability coverage or property damage liability coverage.

55.   Accordingly, the punitive damages sought by the Plaintiffs are excluded from liability coverage under the Automobile Policy.

56.   Therefore, under the law, any allegations against Mr. Dedmon and/or Ms. Smith as to punitive damages and any award of punitive damages which may be made in the Underlying Lawsuit are excluded from coverage, and Allstate has no obligations under the policy to Mr. Dedmon and/or Ms. Smith for such allegations or such damages.

57.   Further, if any fines or penalties are ordered by the Circuit Court in the state criminal action against Mr. Dedmon, or by this Court pursuant to any federal criminal charges and guilty plea, such financial punishment imposed upon Mr. Dedmon would likewise not be covered under the Automobile Policy, and Allstate has no obligations under the policy to Mr. Dedmon for such financial punishment.

**IX.   THERE IS NO LIABILITY COVERAGE FOR MR. DEDMON OR MS. SMITH UNDER THE HOMEOWNERS POLICY FOR MR. DEDMON'S USE OF THE TRUCK OR MS. SMITH'S OWNERSHIP AND ENTRUSTMENT OF THE TRUCK**

58.   The Homeowners Policy does not provide liability coverage for the allegations in the Collective Complaints in the Underlying Lawsuit which allege Mr. Anderson's death arose from Mr. Dedmon's use of the truck and/or Ms. Smith's ownership and entrustment of the truck.  See Exhibit "C", Exhibit "D", Exhibit "E", and Exhibit "F" respectively.

59.   The Allstate Homeowners Policy clearly excludes from coverage any bodily injury arising from ownership, entrusting and/or use of the truck, a motor vehicle, as follows:

> **We** do not cover **bodily injury** or **property
> damage** arising out of the <u>ownership</u>,
> maintenance, <u>use</u> or occupancy, renting,
> loaning, <u>entrusting</u>, loading or unloading of
> any motor vehicle or trailer. [Emphasis added.]

60.   Therefore, there is no liability coverage under the
Homeowners Policy for any of the allegations in the Complaints as
to Mr. Dedmon's use of the truck or Ms. Smith's ownership and
entrustment of the truck or any damages or injuries (including Mr.
Anderson's death) arising from either Mr. Dedmon's use of the truck
or Ms. Smith's ownership and entrustment of the truck.

**X. THERE IS NO LIABILITY COVERAGE FOR MR. DEDMON UNDER THE
HOMEOWNERS POLICY BECAUSE THERE WAS NO "OCCURRENCE" UNDER THE
HOMEOWNERS POLICY  AND BECAUSE THE ACTS BY MR. DEDMON NOT RELATED
TO THE TRUCK WERE INTENTIONAL AND ARE EXCLUDED FROM COVERAGE**

61.   The Homeowners Policy does not provide coverage for
alleged "**bodily injury**", unless such "**bodily injury**" (as defined)
arose from an "occurrence" (as defined) to which the Homeowners
Policy applies.

62.   The Homeowners Policy clearly defines an "**occurrence**" as
an "accident" which results in "**bodily injury**" or "**property damage**".

63.   Thus, before there can possibly be a covered "**occurrence**"
under the Homeowner Policy, there must be an "accident" which
results in "**bodily injury**".

64.   Intentional acts by Mr. Dedmon do not and could not
constitute an "accident".

65.   Throughout the Complaint, the Amended Complaint, Second Amended Complaint, and the Third Amended Complaint, the Plaintiffs allege that Mr. Dedmon's acts unrelated to the truck were intentional.   (See Exhibit "C", Exhibit "D", Exhibit "E", and Exhibit "F").

66.   Therefore, under the law, the acts of Defendant Dedmon and any damages or injuries arising from his acts are not covered pursuant to the intentional acts exclusion contained in the Homeowners Policy issued by Allstate.

### XI.   NO COVERAGE BASED ON ANY MISREPRESENTATION AND/OR CONCEALMENT, OR ON ANY LACK OF COOPERATION

67.   The Automobile Policy provides what an "insured person" must do after an accidental loss:  "An **insured person** must cooperate with **us** in the investigation, settlement and defense of any claim or lawsuit."

68.   The Automobile Policy provides:  "**We** do not cover any loss or occurrence in which any **insured person** has concealed or misrepresented any material fact or circumstance."

69.   Furthermore, the Homeowners Policy provides what an "insured person" must do after an accidental loss:  "at our request, an **insured person** will . . . cooperate with **us** and assist **us** in any matter concerning a claim or suit."

70.   The Homeowners Policy provides:  "**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance."

71.   Any false statements and/or concealment of the truth and/or lack of cooperation by Mr. Dedmon would be a clear breach of both insurance contracts and, therefore, in that event, Mr. Dedmon would have no liability coverage under either of the two Policies which were issued by Allstate.

72.   Morever, any false statements and/or concealment of the truth and/or lack of cooperation by Ms. Smith would be a clear breach of both of the Policies and, therefore, in that event, Ms. Smith would have no liability coverage under either of the two Policies which were issued by Allstate.

## XII.   LIABILITY COVERAGE FOR MR. DEDMON'S INTENTIONAL ACTS IS AGAINST MISSISSIPPI PUBLIC POLICY

73.   Mississippi law provides that Mississippi public policy prohibits insurance coverage for criminal acts such as those acts which Mr. Dedmon has been charged with as a result of the incident (capital murder with enhancement as a hate crime).

74.   To allow Mr. Dedmon to have liability insurance coverage under either of the Policies under the circumstances of this matter would violate the public policy of Mississippi, and possibly encourage parties to commit and/or repeat intentional and criminal acts, since such parties might be able to do so without suffering full financial consequences.

75.  Consequently, Allstate is entitled to a judicial declaration, as a matter of law and public policy, that there is no liability coverage for Mr. Dedmon's acts in the Underlying Lawsuit or the damages sought in the Underlying Lawsuit under either the Automobile Policy or the Homeowners Policy.

## XIII. DECLARATORY RELIEF SOUGHT

76.  A justiciable controversy exists between the parties, such that, pursuant to Federal Rule of Civil Procedure and 28 U.S.C. § 2201, *et seq.*, Allstate requests a declaratory judgment as to the respective rights and obligations of the parties under the Automobile Policy and the Homeowners Policy in connection with the claims asserted against Mr. Dedmon in the Underlying Lawsuit.

77.  Allstate specifically requests this Court to declare there is no liability insurance coverage under either the Automobile Policy or the Homeowners Policy for the allegations in the Underlying Lawsuit or any alleged damages sought in the Underlying Lawsuit.

78.  Allstate further specifically requests the Court to declare Allstate has no duty to defend or indemnify either Mr. Dedmon or Ms. Smith under or pursuant to either the Automobile Policy or the Homeowners Policy as to or against the claims asserted in the Underlying Lawsuit, or as to or against the damages sought in the Underlying Lawsuit.

79.  Allstate still further specifically requests the Court to declare that Ms. Young, Ms. Anderson, Mr. L. Anderson and Mr. E. Anderson, and the Estate of James C. Anderson have no recourse against Allstate as to or under the Automobile policy or as to or under the Homeowners Policy in regard to Mr. Dedmon's acts and/or Ms. Smith's acts, and further declare that the two Policies are not a source of recovery for any of the alleged claims or damages resulting from Mr. Dedmon's acts and/or Ms. Smith's acts.

80.  To reiterate, the following exhibits are attached hereto in support of Allstate's Complaint for Declaratory Judgment:

| | |
|---|---|
| Exhibit "A" | Allstate Automobile Policy; |
| Exhibit "B" | Allstate Homeowners Policy; |
| Exhibit "C" | Complaint filed in Underlying Lawsuit; |
| Exhibit "D" | Amended Complaint filed in the Underlying Lawsuit; |
| Exhibit "E" | Second Amended Complaint filed in the Underlying Lawsuit; |
| Exhibit "F" | Third Amended Complaint filed in the Underlying Lawsuit; |
| Exhibit "G" | Indictment returned September 19, 2011; |
| Exhibit "H" | Petition to Enter a Guilty Plea |
| Exhibit "I" | Certified transcript of Mr. Dedmon's guilty plea to murder with enhancement in the Circuit Court of Hinds County; and |

**WHEREFORE, THE ABOVE GROUNDS CONSIDERED,** Allstate respectfully requests this Court to adjudicate and order as follows:

(1)  No liability insurance coverage exists for Mr. Dedmon and/or Ms. Smith under either the Automobile Policy or the Homeowners Policy for the Underlying Lawsuit or any alleged damages (compensatory or punitive or otherwise) sought in the Underlying Lawsuit;

(2) Allstate has no duty under or pursuant to either of the two Policies (or otherwise) to defend or indemnify Mr. Dedmon and/or Ms. Smith against the claims asserted by Mrs. Young, Mrs. Anderson, Mr. L. Anderson and Mr. E. Anderson and the Estate of James C. Anderson in the Underlying Lawsuit or otherwise;

(3) Mr. Dedmon and Ms. Smith have no recourse against Allstate under either or both of the two Policies;

(4)  The two Policies are not a source of recovery for the alleged damages of Ms. Young, Ms. Anderson, Mr. L. Anderson, Mr. E. Anderson, and the Estate of James C. Anderson resulting from the acts of Mr. Dedmon and/or Ms. Smith; such that they and the Estate have no recourse against Allstate under either or both of the two Policies; and

(5)  This Court's adjudication is binding on all of the parties, as well as any person or entity in privity with the parties, or having any claim by or through the parties.

28

Allstate further requests such other and further relief, both special and general, at law or in equity, which is appropriate under the circumstances.

This the 13th day of April, 2012.

Respectfully submitted,

ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY

BY: _____
    WILLIAM C. GRIFFIN, MSB #5021

OF COUNSEL:

CURRIE JOHNSON GRIFFIN GAINES & MYERS, P.A.
1044 River Oaks Drive
P. O. Box 750
Jackson, MS  39205-0750
Telephone:  (601) 969-1010
Telecopier: (601) 969-5120